UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY S. CROUCH, | No. 1:12-cv-01657-SKO HC |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| STUART SHERMAN, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, was sentenced to an enhanced term under the California Three Strikes Law (Cal. Penal Code § 667) for failing to register as a convicted sex offender during a brief sojourn in Kern County.[1]  He raises multiple issues, none of which provide a basis for habeas relief.

**I.    Factual Background[2]**

In 1987, Petitioner was convicted of rape, penetration with a foreign object, and robbery (Cal. Penal Code §§ 667 (c)-(j); 1170.12 (a)-(e)) arising from a single incident.  Because of these

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

[2] This statement of facts is derived from the opinion of the California Court of Appeal for the Fifth Appellate District. *People v. Crouch*, 2011 WL 2587320 (Cal.App.5 Dist. July 1, 2011) (No. F059083), reproduced at Doc. 14 at 44-67.

1

convictions, he is required to register as a sex offender (Cal. Penal Code § 290). Petitioner served his prison sentence and was discharged from parole in May 1999. He last registered in May 2008 in Torrance, California, where he lived with his sister.

Torrance Police Detective Rosemary Herrera testified that when she registered Petitioner, she emphasized the importance of his observing all of the written requirements set forth on the registration form. Petitioner was required to read and initial each requirement, including:

> My responsibility to register as a sex offender is a lifetime requirement,
>
> Upon coming into, or when changing my residence address within a city and/or county in which I am residing, I must register or reregister in person within five (5) working days as a sex offender with the law enforcement agency having jurisdiction over my residence.
>
> If I change my registered address to a new address, either within the same jurisdiction, or anywhere inside or outside the state, I must inform the last registering agency or agencies in person within five (5) working days before I leave. If I do not know my new residence address, I must later notify, by registered or certified mail, the last registering agency or agencies of the new address or transient location within five (5) working days of moving to the new address or location.
>
> If I have more than one residence address at which I regularly reside (regardless of the number of days or nights I spend at each address), I must register all of the addresses with the law enforcement agency or agencies having jurisdiction over these residences.

Doc. 14 at 45.

Detective Herrera testified that she explained to Petitioner that he needed to let her know of his whereabouts if he was gone for two, three, or four weeks. Petitioner never informed the detective that he was living in Rosamond, Kern County, California.

Before 2009, Petitioner, his girlfriend, and their baby lived with Petitioner's sister, Theresa Crouch, in Torrance, California. Petitioner, a plumber, had his own business. After the baby was born, Petitioner's sister, Theresa Crump, told him to get rid of his two pit bulls, who were destroying her backyard.

2

In December 2008, Petitioner contacted Diana Daunert, a schoolteacher who lived and operated an animal rescue facility in Mojave, California, seeking a place to keep the dogs. Daunert agreed to board the dogs in return for Petitioner's performing plumbing and other work, including building kennels and fences. Petitioner worked for Daunert for four days in December before leaving to work on a Christmas tree lot near his home. While in Mojave, he slept outside with his dogs. After the holidays, Petitioner returned with a motorhome and continued working for Daunert until February 10 or 11, 2009.

Petitioner left Daunert's property several times--to assist her by picking up a large donation of dog food, to help renovate a house in Lancaster, to attempt to arrange a swap of the motorhome for a truck, and to stay in Los Angeles. At some point, Petitioner told Daunert that he had a major fight with his wife and was never going back. He later told Daunert that he intended to go to relatives in Oklahoma and conduct a plumbing business there. Petitioner left Daunert's property with one or both of his dogs.[3]

Robert G. Downs, who lived down the road from Daunert, encountered Petitioner in January or February 2009 when Petitioner's motor home broke down on the roadway in front of Downs' home.[4] Downs allowed Petitioner to leave the vehicle on Downs' property until he could get it going again. Petitioner used Downs' telephone, contacted people, and eventually got the vehicle running again after three or four weeks. Downs testified that he saw Petitioner daily and did not recall his leaving except for two or three days when he left and returned with a pick-up truck. During his stay, Petitioner was "a perfect gentleman."

On February 23, 2009, Kern County Deputy Sheriff Dennis Gagnon arrested Petitioner after stopping him for driving a truck without front or back license plates. Petitioner, who was not carrying identification, gave a false name and birthdate. After Gagnon's records check failed to identify anyone with that name and birthdate, Gagnon handcuffed Petitioner and drove him to his nearby motor home, where Petitioner claimed to have left his wallet. After Gagnon entered

---

[3] The record is unclear about whether one of Petitioner's dogs had died by that time or whether the dog was at the vet and died later.

[4] Downs testified that he took medications that impaired his memory. He also advised the trial court, out of the jury's presence, of several family difficulties in the past year that had also affected his ability to recall relevant events.

the home and could not find the wallet, Petitioner disclosed his real name and explained he was avoiding a warrant issued by the Torrance Police Department.[5]

Although Torrance had not issued a warrant for Petitioner's arrest, Gagnon discovered that Petitioner was a registered sex offender who had been living in two locations on Joshua Lane without registering in Kern County. Gagnon testified that he spoke with Petitioner's mother, who told him that Petitioner was transient and homeless, but never spoke to Petitioner's sister.

Larry Smith, an investigator for the Kern County Public Defender's Office, testified that Daunert told him that Petitioner stayed with her for three weeks in December 2008 and January and February 2009, but left several times in that period. On one occasion, Daunert gave Petitioner a ride home, and on other occasions, he was picked up by his mother and a boyfriend. In a July 2009 interview, Petitioner's sister told Smith that Petitioner had stayed at a rescue facility in the desert long enough to pay off the cost of boarding his dogs there. She picked him up there on one occasion. When Smith interviewed Petitioner's mother on August 6, 2009, she told him that Petitioner had lived in his motor home after it broke down in the desert. On one occasion, she drove to Rosamond to bring him home.

Officer Stephanie Kennedy, supervisor of the registration unit of the Kern County Sheriff's Department, testified that Petitioner had not registered in Kern County but was currently registered in Torrance, California.

Petitioner's mother, Barbara Smith, testified that Petitioner had resided in Torrance for the prior 2 ½ years, either with her, his former wife, or his sister Theresa. She picked Petitioner up in Rosamond at least three times in January and February 2009. (A friend with a truck had initially driven Petitioner and the dogs there since the dogs were too big for her car.) On another occasion, Smith saw Petitioner in Theresa's home. Petitioner had taken the motorhome out of storage in January 2009, and she assumed he was living in it while he worked at the kennels.

Theresa Crouch testified that in February 2009, Petitioner lived in her home in Torrance. His belongings were there, and he received his mail there. Petitioner was gone for a few days at a

---

[5] The record also suggests that Petitioner hoped to ensure that his dog, who was in the truck, would be cared for by Downs and would not be sent to an animal shelter.

time, returning frequently to stay, eat, and do his laundry before going back to continue working off his debt for boarding his dogs.

## II.     Procedural Background

On July 10, 2009, the Kern County District Attorney charged Petitioner with one count of willful failure to register as a sex offender within five working days of coming into or changing residence within a jurisdiction (Cal. Penal Code § 290(b)) and one count of willful failure to notify the last registering agency of his move (Cal. Penal Code § 290.013(a)).  In September 2009, he was tried in a bifurcated trial in Kern County Superior Court.  On September 22, 2009, the jury convicted Petitioner on both counts.  The parties then submitted Petitioner's prior convictions to the judge for determination of strikes.  On December 3, 2009, the court sentenced Petitioner to 25 years to life in prison.

Petitioner filed a direct appeal to the California Court of Appeal, Fifth Appellate District, which affirmed the conviction on July 1, 2011.  The California Supreme Court denied review.

On October 10, 2012, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On October 25, 2012, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  The Court summarily denied the petition on December 19, 2012.

## III.    Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme

malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

6

law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

## IV.     Petitioner's Claims

### A.     Adequacy of Jury Instructions

In his first two claims, Petitioner alleges errors in the jury instructions.

#### 1.     Standard of Review

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review.  "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief."  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72.  Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993).  A reviewing court may not judge the instruction in isolation, but must consider it in the context of the entire record and of the

instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157.

Even when the trial court has made an error in the instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

### 2. Omission of Specific Reference to Duty to Register in Kern County

Before the trial court, the parties stipulated "that the defendant actually knew that he had a duty to register as a sex offender under Penal Code section 290 wherever he resides." In his first claim, Petitioner contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the jury instructions did not specify that Petitioner had to actually know that he had a duty to register as a sex offender in Kern County. Specifically, he argues that the instructions did not require the jury to find that he actually knew that § 290 deemed the motorhome to be a residence triggering the registration requirement.

#### a. Knowledge of Registration Requirement

The trial court instructed the jury:

> The defendant is charged in Count 1 with failing to register as a sex offender in violation of Penal Code Section 290(b).
>
> To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant was previously convicted of a registerable offense. And next to that element in the jury instruction I put s-t-i-p, that's been agreed to, stipulated. Two, the defendant resided in Kern County, California. Three, the defendant actually knew he had a duty to register as a sex offender under Penal Code Section 290 wherever he resided. And next to three I put another stip, s-t-i-p. You don't have to reach that, that's a

8

given. And four, the defendant willfully failed to register as a sex offender with the Sheriff of that county within five working days of coming into or changing his residence within that county.

The defendant is charged in Count 2 with failing to register as a sex offender.

To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant had previously been convicted of a registerable offense. And again I wrote stip because that's been agreed. Two, the defendant resided in Kern County, California. Three, the defendant actually knew that he had a duty to register as a sex offender under Penal Code Section 290 wherever he resided. And again, I wrote s-t-i-p for stip on that element. And four, the defendant willfully failed to notify law enforcement in Torrance, California within five days of coming into or changing his residence to Kern County.

RT 1 at 240-41 (Lodged Doc. 9).

### b. Court of Appeals Decision[6]

Noting that the parties had stipulated that Petitioner had knowledge of his duty to register, the state court rejected Petitioner's contention, distinguishing the state precedent on which Petitioner had relied and stating, in pertinent part:

> In evaluating the adequacy of the jury instructions, the question is whether there is a reasonable likelihood that the jury understood the charge as the defendant asserts. An appellate court considers the specific language under challenge and, if necessary, the charge in its entirety. We determine whether the instruction, so understood, states the applicable law correctly. (*People v. Kelly* (1992) 1 Cal.4th 495, 525-526.) Here, modified CALCRIM No. 1170 adopted the stipulated language that appellant "actually knew he had a duty to register as a sex offender under Penal Code section 290 wherever he resides." That language avoided the deficiencies in [*People v.*] *Garcia* [25 Cal.4th 744 (2001)], [*People v.*] *LeCorno* [109 Cal.App.4th 1058 (2003)], and [*People v.*] *Jackson* [109 Cal.App.4th 1625 (2003)]. Reversal for instructional error is not required.

*Crouch*, 2011 WL 2583320 at 12.

///

///

---

[6] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

### c. **Discussion**

The state court resolved Petitioner's challenge by interpreting the state statute mandating registration of convicted sex offenders—exactly the type of state law analysis to which federal habeas courts are required to defer. It concluded that the statutory element was that to which Petitioner had stipulated at trial and declined to adopt the more tailored instruction of the knowledge requirement that Petitioner first advocated in his direct appeal.

To the extent that Petitioner argues a federal constitutional basis for this claim, he relies on federal cases requiring the prosecution to prove all elements of the crimes beyond a reasonable doubt. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994) ("The government must prove beyond a reasonable doubt every element of a charged offense"); *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) ("The government bears the burden of proving all elements of the offense charged"); *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). The problem with his argument is that the state court rejected Petitioner's version of how the statute should be interpreted and concluded that the prosecution had proved every element of the statute.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. "Federal courts are extraordinarily chary of entertaining habeas corpus violations premised upon asserted deviations from state procedural rules." *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991). AEDPA imposes "a highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh*, 521 U.S. at 333 n. 7. Petitioner's claim that the state court misinterpreted the California registration law is not cognizable in a federal habeas petition.

### 3. **Proof of Actual Offense Date**

As his second ground for habeas relief, Petitioner contends that the trial court erred in giving CALCRIM 207, which instructs the jury that the evidence need not establish the actual date of the offense. Petitioner contends that the date of the crime is necessary since the prosecution had to prove five consecutive days of residence to trigger a duty to register.

10

### a. **Instruction as Given**

> It is alleged that the crime occurred on or about February 23, 2009. The people are not required to prove that the crime took place exactly on that date but only that it happened reasonably close to that date.

RT 231.

### b. **State Court Decision**

The state court rejected Petitioner's contention that the prosecution was required to prove five consecutive days of residence to trigger the duty to register:

> "There is no language in section 290 that states or implies that a sex offender need not register if he stays at a second or additional location for less than five consecutive days. The reference in the statute to "five working days" pertains to the time in which a sex offender must notify law enforcement of his location upon entering or leaving a jurisdiction or establishing a second or additional location." (*People v. Poslof*, [126 Cal.App.4th 92, 102 (2005)].) Similarly this court has held: "The purpose of the section 290 registration requirement is to assure that convicted sex offenders are readily available for police surveillance. The triggering of a sex-offender's five-day notice period is a question for the jury. The question is not dependent upon whether the offender stayed at a residence five or more consecutive days. The duty to register arises when the sex offender enters a jurisdiction and ends when he leaves the jurisdiction." (*People v. Williams*, [171 Cal.App.4th 1667, 1672 (2009).)
>
> Although CALCRIM No. 207 referenced an approximate commission date of February 23, 2009, for the crime of nonregistration, CALCRIM No. 1170 as read to the jury clearly advised as to statutory offense, including: "[t]he defendant willfully failed to register as a sex offender with the Sheriff of that county within five working days of coming into or changing his residence within that county." The reference to the date of commission in CALCRIM No. 207 did not deflect the jury's attention from the elements set forth in CALCRIM No. 1170 or diminish the prosecutor's burden of proof. Pursuant to CALCRIM No. 251, the court advised the jury that to find appellant guilty of the crimes charged in counts 1 and 2, they were required to find that appellant intentionally committed or failed to do the required act and did so with the specified mental state set forth in the instruction for the substantive crime. CALCRIM No. 1170, as read to the jury, required the prosecution to prove four elements, including appellant's failure to register as a sex offender with the Kern County Sheriff within five working days of coming into or changing his residence in Kern County. Nothing in the record rebuts the well-established presumption that jurors are able to correlate, follow, and understand the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) We reject appellant's challenge to CALCRIM No. 207.

*Crouch*, 2011 WL 2583320 at 13.

### c. Discussion

As with his first claim, Petitioner contends that the inclusion of CALCRIM 207 relieved the prosecution of its burden of proving all elements of the crime. Once again, Petitioner challenges the state court's construction of state law contrary to the position that Petitioner advocates. As noted above, this Court's habeas jurisdiction does not extend to state courts' construction of state laws.

No trial witness identified with certainty the date on which Petitioner began staying in Kern County to work off his dog-boarding debt. Accordingly, CALCRIM 201 was required to advise the jury that no specific date was necessary under California law so long as the elements of the crimes were proven. The Court also provided the CALCRIM 1170 instruction, which, as read to the jury, set forth all elements of the two charged crimes. As a whole, the instructions were complete, allowing the jury, as factfinders, to determine whether Petitioner's duty to register in Kern County was triggered, and if so, the date on which Petitioner was statutorily required to do so.

The state court's providing CALCRIM 207 did not relieve the prosecution of its duty to prove all elements of the crimes charged.

### 4. Ineffective Assistance of Counsel

For the first time in his federal petition, Petitioner contends that if the Court decides claims one and two against him, his trial counsel was ineffective in failing to object to the instructions.

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate

12

1  that his trial counsel's performance "fell below an objective standard of reasonableness" at the
2  time of trial and "that there is a reasonable probability that, but for counsel's unprofessional
3  errors, the result of the proceeding would have been different." *Id.* at 688, 694.  The *Strickland*
4  test requires Petitioner to establish two elements: (1) his attorney's representation was deficient
5  and (2) prejudice.  Both elements are mixed questions of law and fact.  *Id.* at 698.

6  These elements need not be considered in order.  *Id.* at 697.  If a court can resolve an
7  ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's
8  performance was deficient.  *Id.*

9  Under 28 U.S.C. §2254(d), a federal habeas court's review is limited to claims that have
10 been "adjudicated on the merits in State court proceedings." *See Cullen v. Pinholster*, 563 U.S.
11 170, 181-82 (2011).  Under the habeas scheme set forth in AEDPA, state courts have the primary
12 responsibility to address petitioners' claims.  *Visciotti*, 537 U.S. 19, 27.  This means that
13 petitioners must exhaust their claims before the state courts before presenting them for federal
14 habeas review.  28 U.S.C. §2254(b).  Because Petitioner did not advance this argument in state
15 court, it is not cognizable.

16 In any event, since Petitioner cannot prevail on either of the first two grounds alleged in
17 the petition, counsel's failure to object using those grounds cannot be said to have prejudiced
18 Petitioner.

19 **B.     Due Process: Insufficient Evidence**

20 In his third claim, Petitioner contends that his 4th and 14th Amendment rights to due
21 process were violated because the evidence was not sufficient to prove that (1) Petitioner knew
22 that sleeping in a recreational vehicle constituted residence; (2) Petitioner spent five consecutive
23 days in Kern County, triggering a duty to register there; and (3) Petitioner had moved from his
24 Torrance residence to Kern County.

25 **1.     Standard of Review**

26 To determine whether the evidence supporting a conviction is so insufficient that it
27 violates the constitutional guarantee of due process of law, a court evaluating a habeas petition
28 must carefully review the record to determine whether a rational trier of fact could have found the

13

essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and draw reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the trier of fact could reasonably have reached its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).

### 2. **Residence in Recreational Vehicle**

Petitioner contends that the prosecution failed to prove he knew that living in a recreational vehicle (motor home) constituted residence in Kern County. The Court of Appeal rejected this argument, citing testimony that Petitioner himself told Deputy Gagnon that he had been living in Rosamond to evade a warrant issued by the City of Torrance. The Court cited *City and County of San Francisco v. Givens* (85 Cal.App.4th 51, 56 (2000)) for the proposition that under California Evidence Code § 411, the direct evidence of a single witness is sufficient to constitute substantial evidence.

Construing the evidence in the light most favorable to the prosecution, as this Court must do, Petitioner's admission to living in Rosemond to evade the warrant constitutes evidence from which the jury could conclude that Petitioner was aware that living in a residential vehicle constituted residence in Kern County.

### 3. **Five Consecutive Days Residence in Kern County**

Petitioner contends that the evidence adduced at trial was not sufficient to prove that he ever resided in Kern County for five consecutive days. The state court rejected this argument on legal and factual grounds, quoting:

> "The purpose of the section 290 registration requirement is to assure that convicted sex offenders are readily available for police surveillance. The triggering of a sex offender's five-day notice period is a question for the jury. The question is not dependent on whether the offender stayed at a residence five or more consecutive days. The duty to register arises when a sex offender enters a jurisdiction and ends when he or she leaves the jurisdiction."

(*People v. Williams, supra*, 171 Cal.App.4th at p. 1672)

*Crouch*, 2011 WL 2587320 at 14.

As discussed above, a federal habeas court's jurisdiction does not include the reexamination of state court determinations of state law questions. *Estelle*, 502 U.S. at 71-72. In any event, the state court added that Diana Daunert's testimony that Petitioner lived on her property continuously from early January to mid-February 2009 was sufficient to support a jury verdict the Petitioner lived in Kern County for five consecutive days, thereby triggering a duty to register. This Court agrees.

### 4.  Move From Torrance to Kern County

The state court also rejected Petitioner's argument that he had not been charged with failure to register at a second address and that sufficient evidence did not support a conclusion that he had moved from his registered address in Torrance. Again, the court's reasoning reflected both legal and factual bases for its conclusion:

> Section 290, subdivision (b), as charged in this case, requires a person described in subdivision (c) of that statute to register with the appropriate law enforcement official "within five working days of coming into, or changing his or her residence within, any city, county, or city and county . . . ." As noted above, the duty to register arises when the sex offender enters a jurisdiction and ends when he or she leaves the jurisdiction. Moreover, section 290 refers to "the concept of residing in a jurisdiction" rather than "having a place of residence there." (*People v. Williams*, *supra*, 171 Cal.App.4th at p. 1672-1673, fn. omitted.) To the extent section 290, subdivision (b) required evidence of a "move," Deputy Gagnon testified appellant told him he had been living in the Rosamond area of Kern County for two months, at two different residences on Joshua Lane, to avoid a warrant issued by the Torrance Police Department. The testimony of one witness, if believed, is sufficient to prove any fact. (*People v. Vega* (1995) 33 Cal.App.4th 706, 711, citing Evid.Code, § 411.)

*Crouch*, 2011 WL 2587320 at 15.

Reexamining state court determinations of state law questions is not within this Court's jurisdiction. *Estelle*, 502 U.S. at 71-72. The jury's finding was supported by sufficient evidence.

### C.  Due Process: Sentencing Errors

Petitioner was sentenced to an extended term under California's Three Strikes Law (Cal. Penal Code § 667). The California Legislature enacted its enhanced sentencing (three strikes) law

15

1  "to ensure longer prison sentences and greater punishment for those who commit a felony and
2  have been previously convicted of one or more serious and/or violent felony offenses." Cal.
3  Penal Code § 667(b). The law provides that the prison sentence of an individual convicted of a
4  serious felony, who has previously been convicted of a serious felony or its equivalent in another
5  jurisdiction, shall be enhanced by another consecutive five-year term for each such prior
6  conviction. Cal. Penal Code § 667(a)(1).

Petitioner contends that the trial court abused its discretion in refusing to treat the registration offense as a misdemeanor and to set aside the strikes attributable to his prior convictions. Respondent contends that this Court lacks jurisdiction to reach this issue since it concerns only the application of California state law. The Court agrees that it lacks jurisdiction to reconsider the trial court's sentencing analysis.

The state trial court's determination not to strike Petitioner's prior convictions was an exercise of the court's sentencing discretion under California law. *See People v. Superior Court (Romero)*, 13 Cal.4th 497, 528-31 (1996). Federal habeas courts review for violations of federal constitutional law, not for state courts' abuses of discretion. *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998). Nor do federal habeas courts review state court decisions on issues of state law. *Estelle*, 502 U.S. at 67-68. The Court declines to second-guess the trial court's determination not to excuse Petitioner's prior convictions in the course of applying California sentencing law.

### D.  Cruel and Unusual Punishment

Petitioner contends that the state court's imposition of a sentence of 25 years to life imprisonment for his failure to register as a sex offender constitutes cruel and unusual punishment in violation of the 8th Amendment to the U.S. Constitution.

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Courts determine whether punishment is cruel or unusual by looking beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

///

Whether a sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment requires the court to determine whether the term is grossly disproportionate to the offense. *Lockyer*, 538 U.S. at 72.  What constitutes a grossly disproportionate sentence is unclear. *Id.* "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.  Successful challenges based on disproportionality are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).

In the 1990s, multiple states, including California, responded to public concerns about the threat of career criminals by enacting statutes imposing enhanced sentences on repeat offenders. *Ewing v. California*, 538 U.S. 11, 24 (2003).  California's three strikes law was intended to be "a focused effort to create a sentencing policy that would use the judicial system to reduce serious and violent crime." *Id.* (quoting Ardaiz, *California's Three Strikes Law: History, Expectations, and Consequences*, 32 McGeorge L.Rev. 1, 12 (2000)).  In addressing the three strikes law and other state enhanced sentencing schemes, the Supreme Court declined to alter its long-time practice of deferring to state legislature's policy-making on sentencing. *Ewing*, 538 U.S. at 24-25.  Nothing in the 8th Amendment prevents California from making a policy decision that "public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime." *Id.* at 25.

Ewing challenged a sentence of 25 years to life for "shoplifting three golf clubs." *Id.* at 28.  The Supreme Court rejected that characterization, finding that Ewing had stolen golf clubs valued at $1200 after having previously been convicted of two serious or violent felonies. *Id.* The Court emphasized that a fair proportionality evaluation appropriately considered not only the current offense, but also Ewing's criminal history, which included "numerous misdemeanor and felony offenses," nine prison terms, commission of crimes while on probation and parole, and prior "strikes" including robbery and three residential burglary counts. *Id.* at 30.  "In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense: '[I]t is in addition the interest . . . in dealing in a harsher manner with those

17

who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" *Id.* at 29 (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)). The Court concluded that a sentence of 25 years to life, imposed under the three strikes law, was not grossly disproportionate and, therefore, did not violate the 8th Amendment's prohibition of cruel and unusual punishment. *Ewing*, 538 U.S. at 30-31.

Supreme Court determinations on 8th Amendment challenges to enhanced sentences have not been consistent, however. In *Rummel*, 445 U.S. at 276, the Court held that a life sentence for defrauding the victim of $120.75 was not disproportionate where defendant had two prior felony convictions. In *Solem*, however, the Court held that a life sentence for passing a $100 bad check was disproportionate under South Dakota recidivist statute where (1) crime was nonviolent and well under the baseline amount for a felonious theft, (2) punishment was the maximum that could be imposed for any crime, and (3) the defendant had six prior nonviolent felonies, none of which involved a crime against a person and all of which were committed when the defendant was under the influence of alcohol. 463 U.S. at 303. Then, in *Harmelin v. Michigan* (501 U.S. 957, 965 (1991)), the Court observed that "*Solem* was scarcely the expression of clear and well accepted constitutional law," and rejected the proposition that the proportionality principle applied in an analysis of cruel and unusual punishment. It affirmed Harmelin's sentence of life without possibility of parole for possession of 672 grams of cocaine. *Id.* at 961, 996. In *Lockyer*, 538 U.S. at 72, the Court observed that it had not established a "clear or consistent path for courts to follow" in determining "whether a sentence for a term of years can violate the Eighth Amendment." It then upheld a sentence of two consecutive terms of 25 years to life for two separate thefts of videotapes by a defendant with a diverse criminal record and heroin addiction.

Because the contours of the Eighth Amendment's disproportionality principle are not clear, the state court's affirming Petitioner's enhanced sentence was not objectively unreasonable under established federal law. 28 U.S.C. § 2254(d). Accordingly, this Court may not grant a writ of habeas corpus based on the sentence imposed by the state court.

//

//

**V.      Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

19

///

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

## VI. Conclusion

The Court hereby DENIES the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court declines to issue a certificate of appealability. The Clerk of Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated:     **June 6, 2016**                                    /s/ *Sheila K. Oberto*
                                                               UNITED STATES MAGISTRATE JUDGE